**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**United States of America,**

**Plaintiff,**

**v.** **Case No. 10-20037-02-JWL**
**Civil Case No: 14-2452-JWL**

**Randy J. Dyke,**

**Defendant.**

**MEMORANDUM & ORDER**

This case stems from an undercover investigation of a "small time criminal ring" operated by Donald Steele and defendant Randy J. Dyke. *See United States v. Dyke*, 718 F.3d 1282, 1284 (10th Cir. 2013). The government began its investigation into Mr. Steele and Mr. Dyke's activities after Kelly Findley, a cooperating individual hoping to receive some consideration in his own case, introduced Detective Brian Clemmons (acting undercover) to Mr. Steele and Mr. Dyke at Mr. Steele's residence in Lawrence, Kansas. Mr. Steele's residence was known as "the Farm" and the vast majority of undercover operations that occurred between November 2009 and February 2010 occurred at the Farm. Ultimately, undercover agents convinced Mr. Steele and Mr. Dyke to expand their operations from "forging checks, peddling pills, and selling marijuana" to counterfeiting currency and manufacturing methamphetamine. *See id*.

In July 2011, a jury rejected Mr. Dyke's entrapment defense and convicted Mr. Dyke of conspiracy to counterfeit Federal Reserve Notes; conspiracy to intentionally manufacture, distribute and possess with intent to distribute more than 50 grams of methamphetamine, and to

distribute hydrocodone, methadone and marijuana; possession with intent to distribute methamphetamine; and distribution of hydrocodone and methadone. This court rejected Mr. Dyke's subsequent motion for judgment notwithstanding the verdict or, in the alternative, for a new trial and sentenced Mr. Dyke to 235-month term of imprisonment. The Tenth Circuit affirmed Mr. Dyke's conviction. *United States v. Dyke*, 718 F.3d 1282 (10th Cir. 2013).

This matter is now before the court on Mr. Dyke's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 323). In his § 2255 motion, Mr. Dyke contends that his lawyer rendered constitutionally deficient representation that prejudiced Mr. Dyke. He also requests a reduction in his sentence pursuant to Amendment 782. As will be explained, the court denies each of Mr. Dyke's § 2255 claims, denies Mr. Dyke's request for an evidentiary hearing, and denies without prejudice to refiling Mr. Dyke's request for a sentence reduction pursuant to Amendment 782 while the Federal Public Defender's office makes an initial determination of whether Mr. Dyke qualifies for relief under the Amendment.[1]

In his motion, Mr. Dyke asserts claims of ineffective assistance of counsel based on his counsel's failure to review with Mr. Dyke prior to trial the audio and video recordings relied upon by the government at trial; his counsel's failure to call any witnesses at trial on Mr. Dyke's behalf; his counsel's failure to insist upon a voluntary intoxication instruction and to adequately argue that impairment to the jury; and his counsel's failure to present mitigation evidence at the sentencing hearing. Mr. Dyke also makes an additional claim of cumulative error. "To

[1] In ruling on Mr. Dyke's motion, the court has received and has considered Mr. Dyke's reply brief and excuses the late filing of that brief. Mr. Dyke's reply, in large part, challenges the affidavit of his counsel that was submitted by the government in response to Mr. Dyke's motion. In resolving Mr. Dyke's claims, the court has not relied on that affidavit in any respect and the affidavit, then, has had no bearing on the court's resolution of Mr. Dyke's claims.

establish ineffective assistance of counsel, a defendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Applying this standard to Mr. Dyke's claims, the court rejects each of those claims without the need for an evidentiary hearing.

**Failure to Review Undercover Audio Recordings**

For his first claim, Mr. Dyke contends that he received ineffective assistance of counsel because his counsel, prior to trial, failed to review with Mr. Dyke the numerous undercover audio recordings relied upon by the government at trial (and taken from a body wire worn by Detective Clemmons). On these audio recordings, the jury heard Mr. Dyke speaking clearly and coherently with the undercover team about his criminal plans and activities. According to Mr. Dyke, if his counsel had reviewed these recordings with him prior to trial, Mr. Dyke would have been able to defend against those recordings by challenging the authenticity of the recordings such that the recordings would not have been admitted into evidence. According to Mr. Dyke, the recordings were altered through the omission of Mr. Dyke's purported statement, on one occasion, to the undercover team that he "wanted nothing to do with drugs."

This claim is rejected. To begin, Detective Clemmons' testimony at trial was sufficient to authenticate the recordings and to support admission under Federal Rule of Evidence 901. *See United States v. Haley*, 496 Fed. Appx. 771, 773 (10th Cir. 2012). Any dispute over the reliability or accuracy of the recordings would go only to the weight of the evidence and would not have precluded admission of the evidence. *United States v. Guang*, 511 F.3d 110, 120 (2d

Cir. 2007) (rejecting ineffective assistance claim that counsel unreasonably failed to challenge the authenticity of audio recordings; testimony of authenticating witness was sufficient to support admission and disputes over reliability or accuracy went to weight rather than admissibility). Thus, Mr. Dyke cannot show that he suffered any prejudice as a result of his counsel's purported failure to review the audio recordings with him prior to trial and any related failure to challenge the authenticity or admissibility of the recordings. Moreover, the alleged omission of the single statement identified by Mr. Dyke did not change the outcome of the trial in the face of overwhelming evidence of Mr. Dyke's guilt, including numerous audio recordings on which Mr. Dyke can be heard discussing his criminal plans and activities.

Finally, even assuming that Mr. Dyke did not have the opportunity to hear the audio recordings prior to trial, he obviously heard those recordings during the trial itself and could have, at that time, raised an objection if he believed that the recordings had omitted significant statements from Mr. Dyke to his detriment. Mr. Dyke, however, does not indicate that he attempted in any way to bring any inaccuracy in the recordings to his counsel's attention during the trial. For this reason, too, his ineffective assistance claim fails.

**Failure to Call Witnesses at Trial**

Mr. Dyke contends that he received ineffective assistance of counsel at trial when his counsel failed to call witnesses to testify on Mr. Dyke's behalf. Mr. Dyke avers that he provided a list of potential witnesses to his counsel and that these witnesses would have testified to the jury about Mr. Dyke's good character; that Mr. Dyke did not use illegal drugs; that Mr. Dyke did not own expensive cars, clothing or other items that a drug dealer might own; that they had

no knowledge of Mr. Dyke engaging in the illegal activities outlined in the indictment; and that Mr. Dyke, a frequent and heaver consumer of alcohol, often appears sober and coherent even when he is intoxicated. Mr. Dyke avers that his counsel did not call these witnesses at trial despite the fact that Mr. Dyke provided him with a list of these potential witnesses during the pre-trial phase of the case.

Mr. Dyke cannot establish the requisite prejudice with respect to this claim because the proffered testimony would not have changed the outcome of trial. *United States v. Edwards*, ___ Fed. Appx. ___, 2014 WL 5438113, at *5 (10th Cir. Oct. 28, 2014) (rejecting failure-to-call-witnesses claim where proffered testimony would not have changed outcome of trial). The witnesses' purported lack of knowledge of Mr. Dyke's drug trafficking activities has no bearing on whether Mr. Dyke, in fact, sold drugs as the evidence overwhelmingly demonstrated at trial. This is particularly true when the evidence demonstrated that the vast majority of Mr. Dyke's unlawful conduct occurred at Mr. Steele's residence outside the presence of his family. Other issues on which these witnesses allegedly would have testified were simply not disputed by the government, such as the fact that Mr. Dyke did not use methamphetamine and did not live the "high-end" lifestyle of a drug dealer. Testimony as to these facts, then, would simply not have changed the verdict in this case. Finally, proffered testimony that Mr. Dyke often appears coherent and sober even when intoxicated would not be sufficient to permit the jury—despite audio and video evidence depicting Mr. Dyke as coherent and unimpaired—to conclude that Mr. Dyke was so intoxicated or impaired during the commission of the crimes charged that he could not form the requisite specific intent, thereby requiring a "not guilty" verdict. Significantly, in order for the jury to have found that Mr. Dyke's intoxication prevented him from forming the

requisite intent required for a conviction, those witnesses would have needed to testify that Mr. Dyke was actually intoxicated and impaired during the commission of the crimes charged. Because none of the prospective witnesses was present during the commission of the crimes or was involved in the conspiracies charged in any way, these witnesses obviously could not testify to that fact. In other words, these witnesses could not provide any evidence that might allow the jury to conclude that Mr. Dyke was so mentally incapacitated at the pertinent times that he was unable to form the specific mental state required by the crimes charged. *United States v. Rivera-Carrera*, 386 F.ed Appx. 812, 816 (10th Cir. 2010). For these reasons, testimony that Mr. Dyke might appear sober when he is intoxicated is insufficient to change the outcome of trial.

**Voluntary Intoxication Instruction and Defense**

At trial, Mr. Dyke proffered an intoxication instruction explaining that the jury could consider evidence "of the defendant's intoxication in deciding whether the government has proved beyond a reasonable doubt that the defendant acted with the intent required to commit the crimes charged." The court declined to give this or any other intoxication instruction to the jury. Mr. Dyke challenged this decision in his motion for new trial and on appeal. The circuit held that Mr. Dyke failed to present sufficient evidence to create a triable question of voluntary intoxication and no evidence of a mental impairment to the point that he could not form the mens rea necessary to commit the crimes in question. *United States v. Dyke*, 718 F.3d 1282, 1293 (10th Cir. 2013).

Mr. Dyke now contends that his counsel was ineffective because he failed to adequately demonstrate to the court and to the jury that Mr. Dyke was suffering from a mental impairment

by virtue of his alcohol consumption sufficient to warrant the intoxication instruction. Mr. Dyke further contends that his counsel should have secured an expert witness to testify that Mr. Dyke's alcohol consumption was so great that he could not have formed the requisite mens rea for the crimes. This claim fails because Mr. Dyke can establish no prejudice from his counsel's purported failures. Even if his counsel had argued more vigorously to the jury and to the court that Mr. Dyke was impaired by alcohol to the point that he could not form the mens rea necessary to commit the crimes, no fact finder could reasonably draw that conclusion in the face of overwhelming evidence of Mr. Dyke acting and speaking (on video and audio) clearly and coherently during his criminal activities. As noted by the Circuit, the recordings introduced at trial "failed to suggest any of the usual signs of impairment" and demonstrated that Mr. Dyke "spoke all too coherently and clearly about his criminal plans." *Id*. at 1294. As to Mr. Dyke's suggestion that his counsel should have called an expert to testify that Mr. Dyke was mentally impaired, the court, in all likelihood, would not have permitted such testimony in the absence of facts to support it. Because the expert witness would not have been present during the times that Mr. Dyke alleges that he was mentally impaired, any "expert" testimony that Mr. Dyke was mentally impaired at those times—particularly in the face of recordings demonstrating the opposite—would have been speculative.

**Failure to Present Mitigation Evidence at Sentencing**

Mr. Dyke contends that his counsel provided constitutionally deficient performance by failing to present mitigation evidence at Mr. Dyke's sentencing in the form of various witnesses who, according to Mr. Dyke, would have testified as to Mr. Dyke's character, poor health,

substance abuse and ability to appear coherent and sober even when heavily intoxicated. The claim fails in the first instance because Mr. Dyke has not shown that his counsel's conduct was unreasonable or deficient. In fact, counsel for Mr. Dyke advised the court at sentencing that family members and friends were present and desired to address the court, but the court advised counsel that the court typically did not permit such testimony at sentencing. It is difficult, then, to fault Mr. Dyke's counsel for failing to call these witnesses when the court all but rejected counsel's suggestion that he intended to call those witnesses. Moreover, while the court ultimately advised counsel that he could call those individuals as witnesses, the court cautioned counsel that the witnesses would be sworn and would be subject to cross-examination. As the record reflects, counsel for Mr. Dyke explained that the anticipated testimony of the witnesses was duplicative of numerous letters submitted to the court on Mr. Dyke's behalf—twenty-four (24) letters in total—and he decided to rely exclusively on the substance of the letters. In relying on those letters and declining to subject Mr. Dyke's friends and family to cross-examination, counsel's judgment was sound.

In any event, Mr. Dyke cannot establish any actual prejudice from the failure to call these witnesses. As noted, the record in this case reflects that Mr. Dyke's counsel submitted to the court letters on Mr. Dyke's behalf from 24 individuals and that many of those letters were written by individuals in Mr. Dyke's community who received assistance from Mr. Dyke in the past. The letters reflect that Mr. Dyke frequently helped the homeless population in his community and other individuals in need; that he worked at a number of food kitchens; and that he struggled with his addiction to alcohol. The letters reflect that members of Mr. Dyke's community—certainly beyond Mr. Dyke's circle of family and friends—believe that Mr. Dyke

is a good person and a person who contributes to society in meaningful ways. Thus, these letters communicated to the court the very information that Mr. Dyke contends would have been communicated to the court through testimony at the sentencing hearing. Moreover, in sentencing Mr. Dyke, the court, after considering the totality of the circumstances including the letters provided on Mr. Dyke's behalf, sentenced Mr. Dyke to 235 months (less than the minimum sentence recommended by the guidelines) through a downward variance with regard to Mr. Dyke's criminal history score, which the court concluded overstated Mr. Dyke's threat to society in terms of his involvement in the trafficking of methamphetamine. Mr. Dyke has not shown, and cannot show, that he would have received a lesser sentence if counsel had called witnesses to testify at sentencing on Mr. Dyke's behalf. *United States v. Strasser*, 502 Fed. Appx. 736, 740 (10th Cir. 2012) (in light of district court's downward variance from the guideline range, defendant had not shown that it was "more likely than not" that the court would have imposed a lesser sentence but for counsel's asserted errors at sentencing).

**Cumulative Error**

Lastly, Mr. Dyke makes a claim of cumulative error in connection with the errors allegedly made by his counsel. A cumulative error analysis aggregates any errors that individually have been found to be harmless and analyzes whether their cumulative effect on the outcome of trial is such that collectively that can no longer be determined to be harmless. *Wilson v. Sirmons*, 536 F.3d 1064, 1122 (10th Cir. 2008). Because the court has found no merit to any of the issues raised by Mr. Dyke, there is no basis for applying a cumulative error analysis. *United States v. Gonzalez*, 596 F.3d 1228, 1244 (10th Cir. 2010).

**Certificate of Appealability**

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). With respect to the claims dismissed above, for the same reasons stated, Mr. Dyke has not made a substantial showing of the denial of a constitutional right; the court therefore denies a certificate of appealability with respect to those issues.

**Amendment 782**

Mr. Dyke also incorporates into his § 2255 motion, which the court construes as a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c), a request for a sentence reduction pursuant to Amendment 782 to the United States Sentencing Guidelines which took effect on November 1, 2014 and lowers the base offense levels in the Drug Quantity Table. On July 18, 2014, the United States Sentencing Commission voted to apply the amendment retroactively to those offenders currently in prison, but with a requirement that the reduced sentences cannot take effect until November 1, 2015. The Honorable J. Thomas Marten of the District of Kansas recently appointed the Office of the Federal Public Defender to represent any defendant

previously determined to have been entitled to appointment of counsel, or who is now indigent, to determine whether that defendant may qualify for relief under Amendment 782.

The record reflects that Mr. Dyke may be entitled to have the Federal Public Defender represent him to determine in the first instance whether Mr. Dyke qualifies for relief under the amendment. In light of these circumstances, the court believes that the most efficient way to resolve this issue is to forward Mr. Dyke's motion (along with a copy of this order) to the Office of the Federal Public Defender for an initial determination of whether Mr. Dyke qualifies for representation and is entitled to a reduction in his sentence in light of the amendment. In the meantime, the court will deny this aspect of Mr. Dyke's motion without prejudice to refiling the motion on or after February 2, 2015 if the Office of the Public Defender declines to seek relief for Mr. Dyke under Amendment 782.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Dyke's motion to vacate under 28 U.S.C. § 2255 (doc. 323) is denied and the court denies a certificate of appealability on those claims; Mr. Dyke's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c) (doc. 323) is denied without prejudice.

**IT IS SO ORDERED.**

Dated this 22nd day of December, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge